| | | |
|---|---|---|
| DAVID SMITH, INDIVIDUALLY & A/N/F FOR ERIN MICHELLE SMITH, A MINOR, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| VS. | ) ) | Civil Action No.  SA-08-CA-940-XR |
| TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES CHILD PROTECTIVE SERVICES; and WILLIAM BROOKS, INDIVIDUALLY | ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

On this date, the Court considered Plaintiff David Smith's Opposed Motion for Reconsideration of the Court's Order of February 5, 2009 (docket no. 19), Defendant William Brooks's Motion for Summary Judgment (docket no. 10), and Defendant Texas Department of Family and Protective Services' Supplemental Motion to Dismiss Plaintiffs' State-Law Claims (docket no. 23).  After careful consideration, the Court will deny the Motion for Reconsideration, grant the Motion for Summary Judgment in part, and grant the Supplemental Motion to Dismiss Plaintiffs' State-Law Claims against Texas Department of Family and Protective Services.

**I. Factual and Procedural Background**

Plaintiff David Smith, Individually, and as next friend for his minor daughter, Erin Michelle Smith, initiated this lawsuit in state court on October 15, 2008.  Plaintiffs sued Child Protective Services, a division of the Texas Department of Family and Protective Services ("TDFPS") and

William Brooks, a Child Protective Services investigator. Plaintiffs allege that, in late 2005, David

Smith was living with his daughter Erin at his home in San Antonio. *See* Plaintiff's Original Petition

at 4. Plaintiffs allege that during and prior to that time, Julie Smith, David's ex-wife and Erin's

mother, called the San Antonio Police Department to report "blatantly outrageous falsehoods about

the plaintiff." *Id.* David further alleges that "in years prior she [Julie Smith] had likewise made

numerous false CPS reports and false police reports causing plaintiff to be arrested, jailed, and

causing him to defend himself against bogus criminal charges." *Id.* Plaintiffs allege that Julie , who

had several aliases, had made no less than twenty false reports in the preceding twelve months. *Id.*

Plaintiffs allege that, based on Julie's false report, Defendant Brooks interviewed Erin at her

school and then took her from "her elementary school without notice to David Smith and placed her

in the custody of Julie Smith." *Id.* Plaintiffs allege that when Erin was placed in Julie's custody,

Julie had no job, income, or home, and "was battling substance abuse and other serious medical

conditions." *Id.* Plaintiffs further allege that "sometime thereafter," Julie came into possession of

a vehicle that was reported as stolen, that she and Erin then lived in the car, with persons of ill repute

including known drug offenders, and that Erin was placed in grave danger. *Id.* Plaintiffs allege that

Julie was later arrested, intoxicated, with Erin in the automobile reported as stolen, and that she and

Erin had been living on the streets in a stolen vehicle. *Id.* at 5.

Plaintiffs complain that Brooks did not "even search the agency's own database or perform

a criminal background check before concluding that Erin should be removed and placed in Julie

Smith's custody." *Id.* Plaintiffs allege that such a check would have revealed that "prior judges had

found Julie Smith posed a threat to both Mr. Smith and their minor daughter." *Id.* at 4. According

to Plaintiffs, Brooks "did not seek, much less obtain court authorization for the removal of the child

from the school and from David Smith's custody." *Id.* at 4-5. Plaintiffs further allege that Brooks, his supervisor and others at CPS, "engaged in a clear pattern of deceptions, misrepresentations and outright falsehoods to prevent Plaintiff from learning that Erin had been placed in the custody of Julie Smith." *Id.* at 6. Plaintiffs maintain that Brooks and other CPS employees engaged in similar conduct in order to prevent Erin from being temporarily placed in the custody of her paternal grandparents. *Id.*

David also alleges that Defendants' "lies and intimidation" were in retaliation against him for asserting his due process rights and speaking to the press, other media outlets, and elected officials, and that Defendants violated his First and Fourteenth Amendment rights. *Id.* David alleges that, as a result of Defendants' false, defamatory utterances, he was required to appeal the administrative actions and to hire counsel to defend frivolous criminal charges, which were later dismissed. *Id.* at 7. Plaintiffs allege that David was deprived of custody, and suffered damage to his reputation, and that Erin was deprived of the comfort, safety, and protection of her home and forced to relocate without any legitimate basis in law or fact. *Id.* at 8.

In their Original Petition, Plaintiffs assert claims against Brooks pursuant to 42 U.S.C. § 1983 and § 1988 as well as Article I, § 9 of the Texas Constitution and Texas common law, including malicious prosecution, abuse of process, stigmatization, "and related causes of action." *Id.* at 3. Plaintiffs state that they seek both injunctive relief and damages.

Defendants removed the case to this Court on November 21, 2008. On November 25, 2008, Brooks and TDFPS filed motions to dismiss. This Court granted TDFPS's motion to dismiss Plaintiffs' claims for money damages under § 1983 claims against it because it is not a "person" capable of being sued for money damages under § 1983. This Court also granted Brooks's motion

to dismiss in part, dismissing on limitations grounds all of David Smith's § 1983 claims based on Brooks's behavior before October 15, 2006, two years before he filed suit. However, all state-law claims against TDFPS and Brooks remained pending, as did Erin Smith's § 1983 claims against Brooks, which were not barred by limitations, and any claims for injunctive relief under § 1983.

On February 2, 2009, Brooks filed a motion for summary judgment. On March 11, 2009, Plaintiff filed his response in opposition, and Brooks has replied. Brooks moves for summary judgment on the § 1983 claims on the basis of qualified immunity and on the state-law claims based on official immunity.

Plaintiffs, who had mistakenly failed to respond to the motions to dismiss, filed a Motion for Leave to file a Motion for Reconsideration of the Court's Order on the motions to dismiss. By text order, the Court granted Plaintiffs leave to file the motion for reconsideration with regard to the claims against Defendant Brooks, but denied Plaintiffs leave to file a motion for reconsideration of the Court's order granting TDFPS's motion to dismiss.

Before beginning its analysis of the motions, the Court notes that it is difficult to discern the exact nature of Plaintiffs' federal and state claims . The Court construes the following as possible claims against Brooks under § 1983: (1) violations of the Fourth Amendment with regard to the initial interview of Erin at her school; (2) unlawfully seizing Erin and removing her from David Smith's custody in violation of the Fourth Amendment; (3) unlawfully placing Erin with Julie Smith, when such a placement was unreasonably dangerous (deliberate indifference); (4) violation of the right to family integrity (substantive due process); (5) violation of procedural due process; and (6)

First Amendment retaliation claims on behalf of David Smith.[1]

In addition, Plaintiffs assert the following state-law claims: (1) abuse of process; (2) malicious prosecution; (3) defamation ("stigmatization"); and (4) violation of Article I, § 9 of the Texas Constitution.[2] Defendants claim that, because this Court did not previously state that Plaintiff David Smith had included an abuse of process claim, he has not asserted such a claim, and thus Defendants have not moved for dismissal or summary judgment on the claim. While this Court may not have expressly noted the claim, Plaintiffs' petition clearly includes abuse of process among the purported claims.

However, the exact nature of the abuse-of-process claim is unclear. A claim for abuse of process requires (1) an illegal, improper, or "perverted" use of the process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damages as a result of the illegal act. *Martinez v. English*, 267 S.W.3d 521, 528 (Tex. App.–Austin 2008, pet. denied) (citing *Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex.App.–Dallas 2008, no pet.)). The "critical aspect" of an abuse of process claim is the improper use of the process after it has been issued. *Id*. In other words, abuse of process applies to a situation where a properly issued service

---

[1] David Smith's affidavit states that Brooks and CPS circumvented the safeguards set forth in the Texas Family Code, that "[t]hey do this on a regular and customary basis," and "[t]his denied me and my daughter our Fourteenth Amendment rights to equal protection of the laws." David Smith Affidavit ¶ 19. Plaintiffs have not clearly alleged a separate equal protection claim in their pleadings, however, and thus the Court will not recognize an equal protection claim until such time that Plaintiffs move for leave to amend their pleadings and satisfy the pleading standards of *Twombly* with regard to such a claim, if they are intending to assert such a claim.

[2] Plaintiffs had purported to assert "related causes of action," but Plaintiffs have not specified any other causes of action in their briefing, and thus the Court finds that they have not asserted other claims. To the extent the Court previously stated that the petition could be read to include claims of negligence and gross negligence, Plaintiffs' failure to list such claims or discuss them in their briefs indicates that they are not pursuing such claims, and thus any such claims are deemed waived.

of process is later used for a purpose for which it was not intended. *Id.* at 528-29. If the claim is that wrongful intent or malice caused the process to be issued initially, the claim is one for malicious prosecution, not for abuse of process. *Id.* at 529.

Plaintiffs make no specific allegations demonstrating how Brooks abused any process after it issued and Plaintiffs have produced no evidence to support an abuse-of-process claim. Further, the claim under Article I, § 9 appears to be viable only insofar as it seeks injunctive relief. The Court therefore notifies Plaintiffs that it intends to summarily dismiss the abuse-of-process claim and any claim for money damages under Article I, section 9, and Plaintiff is given until **September 29, 2009** to respond to the Court's *sua sponte* notice of intended summary judgment.[3]

## II. Motion for Reconsideration

In the motion for reconsideration, Plaintiff David Smith seeks reconsideration of this Court's order granting summary judgment for Brooks on his § 1983 claims based on limitations. Plaintiff makes two related arguments: (1) because he was required to exhaust his administrative remedies, he could not have brought his § 1983 claims until he had exhausted CPS's administrative remedies, which occurred in "December 5, 2006 when CPS's malicious claims of sexual abuse were overturned on administrative appeal" and (2) the statute of limitations for the § 1983 claims should be analogized to a state-law claim for malicious prosecution, and thus limitations would not begin to run until "Spring [April] 2007" when the criminal charges against him were dropped. In response to the motion, Brooks argues Plaintiffs were not required to exhaust administrative remedies and that limitations has run on the malicious prosecution claim

---

[3] "[I]t is well-settled that a district court may grant summary judgment *sua sponte*, so long as the losing party has ten days notice to come forward with all of its evidence in opposition to summary judgment." *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770-71 (5th Cir. 2000).

Plaintiff cites *Texas Department of Public and Regulatory Services v. Schutz*, 101 S.W. 3d 512 (Tex.App.–Houston [1st Dist.] 2002, no pet.), in support of his argument that he could not file his § 1983 claims until he exhausted his administrative remedies. According to Plaintiff, "*Schutz* stands for the proposition that there is no right to file suit in district court without first submitting to a formal administrative hearing and obtaining a final agency decision."

In *Schutz*, the First Court of Appeals held that *foster* parents were required to exhaust administrative remedies prior to filing suit against the Texas Department of Protective and Regulatory Services in district court. *Schutz*, 101 S.W. 3d at 521-22. The court held that, with respect to allegations of abuse or neglect that occurred in a foster home, Subchapter E of Chapter 261 of the Family Code and Chapter 42 of the Human Resources Code control. *Id.* at 521-22. Because those provisions incorporate an exhaustion-of-remedies requirement, the foster parents were required to submit to an administrative hearing prior to filing suit in district court. *Id.*

In contrast, parents are not required to exhaust CPS administrative remedies before bringing suit in district court. *See Gates v. Tex. Dep't of Family & Protective Servs.*, 252 S.W. 3d 90, 96-97 (Tex. App.–Austin 2008, no pet.). In *Gates*, a parent filed suit alleging that TDFPS's findings and ongoing maintenance of her name in its central registry deprived her of her fundamental right and liberty interest in familial integrity without due process of the law. *Id.* at 94. The court noted that, with respect to investigations of parents, Subchapter D of the Family Code controls and the provisions governing investigations of foster homes discussed in *Schutz* do not apply. *Id.* at 98. The court held that because §261.309 (e) of Subchapter D indicates that persons are not required to exhaust remedies before pursuing a judicial remedy provided by law, the parents were not required to exhaust administrative remedies prior to filing suit. *Id.* at 96-97. This holding is consistent with the statutory

language, which requires the Department to provide an administrative remedy, but expressly states that "[a] person is not required to exhaust the administrative remedies provided by this section before pursuing a judicial remedy provided by law." TEX. FAM. CODE § 261.309.

David Smith is Erin's father and at the time of the investigation was the person responsible for Erin Smith's custody. As Erin Smith's parent, David Smith was not required to exhaust administrative remedies before filing his suit in district court. *Id.* Thus, David Smith was not required to exhaust his administrative remedies before bringing the current claims, and limitations were not tolled by an exhaustion requirement.

David Smith's second argument, that his claims are not barred because the limitations period for his § 1983 claims should be analogized to the two-year, civil-malicious-prosecution statute of limitations, also fails. Texas courts hold that a malicious prosecution claim does not accrue until the criminal proceedings are dismissed because favorable termination is an essential element of the claim. *See, e.g.*, *Leal v. Nat'l Am. Ins. Co.*, 928 S.W.2d 592, 596 (Tex. App.–Corpus Christi 1996, writ denied). David argues that his claims did not accrue until the criminal charges against him were dismissed in April 2007, and thus he had until April 2009 to file suit. However, as pointed out by Defendant Brooks, the statute of limitations for a malicious prosecution claim in Texas is one year, not two: "(a) A person must bring suit for malicious prosecution, libel, slander, or breach of promise of marriage not later than one year after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.002(a).

Plaintiff cites to *Toranto v. Wall*, 891 S.W.2d 3, 6 (Tex. App.–Texarkana 1994, no writ), for the proposition that the two-year limitations period in Texas Civil Practice and Remedies Code § 16.003(a) governs *civil* malicious prosecution claims, and the one-year limitations period in §

16.002(a) governs *criminal* malicious prosecution claims, and thus the analogous limitations period is two years. In *Toranto*, based on admittedly "dusty" law in a "long-forgotten" case, the Texarkana court of appeals held that § 16.002(a)'s one-year limitations period applies only to criminal malicious prosecution claims, while § 16.003 (which does not mention malicious prosecution, but does apply to personal injury actions generally) applies to civil malicious prosecution claims.

However, as pointed out by Judge Rosenthal, no other Texas court has made the distinction between civil and criminal malicious prosecution claims, and "Texas cases since *Toranto* decided under section 16.002 have consistently applied a one-year limitation period to both malicious civil and criminal prosecution claims." *Internet Corporativo S.A. de C.V. v. Business Software Alliance*, Civ. A. No. H-04-2322, 2004 WL 3331843 (S.D. Tex. Nov. 15, 2004); *see also Roehrs v. Conesys, Inc.*, Civ. A. No. 3:05-cv-829, 2005 WL 3454015 (N.D. Tex. Dec. 14, 2005) (rejecting *Toranto* "[b]ased on the plain language of the statute, which is part of a civil code, and in light of recent opinions" and concluding that a one-year statute of limitations applies to all malicious prosecution claims). This Court likewise rejects *Toranto* because the plain language of § 16.002 does not differentiate between civil and criminal malicious prosecution claims. Thus, even utilizing the Texas statute of limitations governing malicious prosecution claims, Plaintiff had to file suit no later than April 2008. He did not file suit until October 15, 2008.

Plaintiff's motion for reconsideration is therefore denied. Accordingly, all of Plaintiff David Smith's § 1983 claims arising before October 15, 2006 are barred by limitations.[4] Similarly, Plaintiff David Smith's state-law malicious prosecution claim is barred by limitations.

---

[4] In any event, the Court notes that its analysis of Erin's § 1983 claims would apply to David's § 1983 claims.

### III. Brooks's Motion for Summary Judgment

Summary judgment shall only be awarded where there is no genuine issue of material fact. FED. R.CIV.P. 56(c). In considering a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). The court must draw reasonable inferences and construe evidence in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*., 475 U.S. 574, 587 (1986).

The party seeking summary judgment initially bears the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If this showing is made, then the burden shifts to the non-moving party to convince the court that a triable issue does exist. *Id*. A party opposing summary judgment must proffer specific facts showing that a genuine triable issue exists, and cannot rely on "the mere allegations or denials of [his] pleadings." *Id*. If the adverse party fails to offer facts showing that "reasonable minds could differ" on a material issue, then summary judgment is appropriate, regardless of any standards of proof imposed by substantive law. *Id*.

In his motion for summary judgment, Brooks asserts the defense of qualified immunity to Plaintiffs' § 1983 claims. Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In performing the qualified immunity analysis, the first inquiry is whether, taken in the light most favorable to the plaintiffs, the facts alleged show that the

officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Aucoin v. Haney*, 306 F.3d 268, 272 (5th Cir. 2002). If no constitutional right would have been violated were the allegations established, the inquiry ends. *Saucier,* 533 U.S. at 201.

If, however, a plaintiff alleges the violation of a constitutional right, the court must then determine whether the right was clearly established at the time of the incident at issue. *Id.* A right is clearly established when its contours are sufficiently clear so that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Finally, if the law was clearly established at the time of the incident, the court must decide whether the defendant's conduct was objectively reasonable. *Aucoin*, 306 F.3d at 272. An official's conduct is objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution. *Hampton v. Oktibbeha County Sheriff Dep't*, 480 F. 3d 358, 363 (5th Cir. 2007). Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Hernandez ex. rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F. 3d 872, 879 (5th Cir. 2004).

In the summary-judgment context, a government official need only plead qualified immunity, which then shifts the burden to the plaintiff. *Gates v. Texas Dept. of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (citing *Michaelik v. Hermann*, 422 F. 3d 252, 262 (5th Cir. 2005)). The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct. *Id.* In order to do so, the plaintiff may not simply rely on mere allegations in the pleadings, but must produce competent summary judgment

evidence raising a genuine issue of material fact. *Morales v. Boyd*, 304 Fed. Appx. 315 (5th Cir. 2008).

In this case, as noted, Plaintiffs fail to clearly set forth their section 1983 claims, thereby complicating the qualified immunity analysis. Moreover, while Plaintiffs provide additional factual detail and summary-judgment evidence in their response to Brooks's motion, they fail to tie their factual allegations to any case law holding that the facts they allege demonstrate a constitutional violation, instead only arguing generally (in one paragraph) that they have shown "bad faith" sufficient to overcome qualified and official immunity. In addition, Plaintiffs fail to even address whether the law was clearly established at the time of the events in question, leaving the Court to do all of counsel's legal research and analysis. The Court expects more from a party represented by counsel.

**A. The Summary-Judgment Evidence**

With his motion for summary judgment, Brooks submits his affidavit and the affidavit of his supervisor, Federico Carranza. Plaintiffs submit the affidavit of David Smith, the affidavit of Teresa Valentic, an attorney who has worked on this case and who used to be a CPS investigator, excerpts from Brooks's deposition, and a letter to David Smith rejecting him as a school volunteer based on his criminal history. The undisputed facts and summary-judgment evidence are as follows:

Plaintiff David Smith is Erin's father, and was made her sole managing conservator in 2001, shortly after Erin's second birthday. It is unknown whether Julie Smith was a possessory conservator. Carranza states that a report of possible sexual abuse of Erin Smith by David Smith was received on October 5, 2006. Plaintiff alleges that the report was made by Julie Smith, but according to Defendant's evidence the identity of the person reporting abuse is confidential. At the

time, Erin was six years old[5] and was attending school at Steuben Elementary School in the North East Independent School District. Carranza determined that it was a Priority 1 case, and then assigned the case to Brooks for investigation.

Brooks states that, after he was assigned the case on October 5, 2005,[6] he first reviewed the full file, which contained substantial history. He noted that a prior investigation had found reason to believe that David had emotionally abused and physically neglected Erin. Further, he noted that TDFPS investigators had been unable to determine whether sexual or physical abuse had occurred.[7]

Brooks states that CPS policy did not require that Brooks ask David for permission or consent before interviewing Erin. Brooks first went to talk to Julie, who he knew was living in a shelter. He also learned that David was Erin's managing conservator. Brooks then went to Erin's school and interviewed her. The interview was videotaped. Brooks stated that Erin repeated some of the things that Julie had reported, but some of her account differed, and she also included additional details, which Brooks viewed as lending credibility to Erin's statements. Based on the interview, Brooks was "uncomfortable" returning Erin to her father "pending the final investigation." Brooks states that he called Erin's emergency contact person, a friend of David's, and then ran criminal history checks on David and Julie. Brooks states that Julie's report came back with no criminal history, while David's included several episodes of family violence and also indicated that

---

[5] The Court notes that Plaintiffs' proposed Amended Complaint states that Erin was seven.

[6] David's affidavit states that Erin was interviewed and placed in Julie's custody on or about November 6, 2005. However, this date conflicts with Defendants' evidence, which states this occurred on October 5 or 6, 2005, and with Plaintiff's other Affidavit statements, which make clear that Erin was removed from David's custody before November 2005.

[7] Plaintiff's affidavit states that he "believes" that Brooks made only a cursory review of the file and did not do a criminal background check. However, this statement demonstrates a lack of personal knowledge on its face, and it is thus not competent summary-judgment evidence.

David used Erin as a shield in a SWAT team action.[8]

When David Smith had not appeared at the school by 5:30 p.m., Brooks called his supervisor, Carranza, and they agreed that Julie would pick up Erin. The emergency contact then arrived, stating that David had requested that he pick up Erin, but Brooks would not release Erin to him because he had not been interviewed and his criminal history had not been checked. The contact person then left, and Smith arrived shortly thereafter. Brooks states that David was angry and requested that Erin be able to go with the emergency contact, but eventually agreed that Erin could go with Julie. David states that he "informed [Brooks] of [Julie's] history of making false reports, her association with known drug dealers and/or offenders and her serious medical condition and instability" and told Brooks that "if he placed [Erin] with Julie Smith it would be a 'death sentence' for Erin." David states that Brooks's assertion that he agreed that Erin could go with Julie "is a lie." David asserts that Brooks falsely stated that he would not be placing Erin with Julie and "then made a huge, cartoonish grin at [him]."

Brooks asserts that the removal from David Smith was merely a "family-based placement." Carranza also states that, under CPS policy, the placement with Julie was not considered a removal of the child.

Brooks states that on October 13, 2005, he interviewed David's parents for placement, and they agreed to pick up Erin on October 17. He states that they called on October 17 to say that they would pick her up on October 18 because they did not want to miss a dental appointment on the 17th, but by the 18th Julie had obtained a temporary court order preventing Erin's removal from

---

[8] David Smith states that this allegation is untrue and has been disproved. Even if untrue, however, it is relevant to what Brooks knew at the time he seized and placed Erin.

Bexar County. David states that his parents tried to pick Erin up on October 13, but Brooks and Carranza lied and tried to get them to sign statements acknowledging that David had sexually abused Erin. David asserts that when they would not cooperate, they were told to come back on October 16 or 17 to pick Erin up. David states that his parents only agreed to wait until the 17th to pick up Erin because "they were lied to by Brooks."

David states that he attended Brooks's deposition and that, in his deposition testimony, Brooks testified that "even after he learned that Erin had missed 18 days of school after being placed with her mother and that she was living in a car in the middle of winter he believed he had no further duty or obligation to assure her safety." He further states that, "[a]fter it became clear that William Brooks had placed Erin in a dangerous environment, he disregarded her safety and tried to bolster his decision to place Erin with Julie Smith" and "took Erin to the Alamo Children's Advocacy Center, a medical clinic, to have her examined for evidence of sexual abuse." David asserts that, "when the results came back negative," Brooks refused to admit this.

Brooks states that he testified in a court hearing to determine Erin's placement, but the Court did not make a decision at that time, and continued the case until November 5, 2005. Brooks further states that he continued working with CPS on the case until March 2006, when it was transferred to CPS's Family Based Security Services Division. Brooks states that he never referred Smith for criminal prosecution.

David Smith states that Julie was arrested three weeks after Erin was placed with her, intoxicated, with Erin in an automobile that was reported as stolen. Erin had not attended school since the placement and had been living in the car with Julie. David Smith states that he had to initiate a state-court case to challenge TDFPS's taking of Erin and placing her with her mother, and

that he also faced frivolous criminal charges.  David asserts that the findings of abuse and neglect were eventually overturned on December 5, 2006.

Plaintiffs allege that they were denied their right to be together as a family for approximately eighteen months.

**B. Fourth Amendment Claims**

Plaintiffs allege that Brooks "violated the Fourth Amendment's prohibition against unreasonable searches and seizures without due process of law."  *See* Plaintiff's Original Petition and Request for Disclosure at 6.[9]  Plaintiffs allege that, without a warrant or court order, Brooks went to Erin's school and interviewed her, and then refused to release her to David Smith or his emergency contact.  They also allege a claim for "wrongful removal" of Erin from David Smith's custody.

Brooks asserts that he is entitled to qualified immunity because his actions were objectively reasonable.  Brooks argues that "it was reasonable to believe that Erin's health and safety were in imminent danger, and Brooks acted reasonably by concluding that the need to protect Erin went beyond a general interest in law enforcement," and that "because the law was not clearly established at the time of the alleged unconstitutional actions (*i.e.* late 2005), Brooks held a reasonable belief that questioning Erin at school and removing her constituted a special need."

It is clear that the Fourth Amendment regulates civil investigations conducted by social

---

[9] Insofar as Plaintiffs are asserting a Fourteenth Amendment due process claim related to the initial seizure, it is subsumed within the Fourth Amendment claim and analysis.  The procedures required under the Fourteenth Amendment for searches and seizures related to child abuse allegations are the same as those required under the Fourth Amendment, and the Fourth Amendment fully protects Plaintiffs' interests. *Gates*, 537 F. 3d at 434-35 (holding that the same legal standard applies in evaluating Fourth and Fourteenth Amendment claims for the search and seizure of children); *Roe v. Tex. Dept. of Protective & Reg. Servs*., 299 F.3d 395, 411 (5th Cir. 2002); *Doe v. Heck*, 327 F.3d 492, 518 n.23 (7th Cir. 2003).

workers. *Roe v. Texas Dep't of Protective and Regulatory Servs.*, 299 F. 3d 395, 401 (5th Cir. 2002); *Wooley v. City of Baton Rouge,* 211 F. 3d 913, 925 (5th Cir. 2000). However, in 2002, the Fifth Circuit noted that it had not "fleshed out the relevant Fourth Amendment standards" in all factual scenarios. *Roe*, 299 F.3d at 401. Specifically, the Court noted that it had not been required to choose between applying the traditional or the special needs doctrines[10] to determine the reasonableness of a particular search. The Fifth Circuit still declined to choose a standard in the context of an investigatory home visit because the parent had consented. *Id.* However, the Court rejected the special needs standard in the context of a child's claim against a social worker for conducting a visual body cavity search and taking pictures. The Fifth Circuit noted that the Court only rarely has permitted "special needs" searches in the face of a person's strong subjective privacy interests, and that the importance of the child's privacy interest, coupled with the Texas social workers' dual purpose and entanglement with law enforcement, resolved the issue of which standard should apply to the visual body cavity search. The Court concluded that the goal of protecting a child's welfare and removing her from an abusive home could not be sufficiently divorced from the purposes of general law enforcement, stating that *Ferguson v. City of Charleston*, 532 U.S. 67 (2001) "teaches that we must apply the traditional Fourth Amendment analysis where a child protective services search is so intimately intertwined with law enforcement." *Roe*, 299 F.3d at 407. The Court continued by noting that "[t]he social worker can take many preliminary steps short of visual body

---

[10] The Court noted that, in special needs cases, the Supreme Court has carved out an exception to the warrant and probable cause requirement, and that public officials can justify warrantless searches with reference to a "special need" divorced from the State's general interest in law enforcement." *Id.* at 404. Examples of such searches include a principal's search of a student's purse for drugs in school, a public employer's search of an employee's desk, a probation officer's warrantless search of a probationer's home, and various drug and urine testing in public schools and in the transportation industry. In these cases, the search's lawfulness is judged by the standard of "reasonableness under all the circumstances."

cavity searches, such as interviewing the child and the parents" and that "[s]ocial workers retain the power to seize a child if 'exigent circumstances' exist; if they 'have reason to believe that life or limb is in immediate jeopardy,' they need not obtain a court order." *Id.* Though the Court concluded that the defendant violated the Fourth Amendment, it also found that the law regarding the special needs doctrine as applied to a social worker's visual searches of naked juveniles was not clearly established in 1999. Because the Supreme Court had not yet explained whether agencies performing a legitimate special need entangled with law enforcement needed to satisfy the probable cause standard, the Fifth Circuit had never opined on the issue in question, and other circuits were divided on whether the challenged acts were a constitutional violation, the law was not clearly established.

In 2005, Judge Rosenthal noted that "[t]he precise level of Fourth Amendment protection against CPS actions in the Fifth Circuit was ... unclear." *Martin v. Tex. Dep't of Protective & Reg. Servs.*, 405 F. Supp. 2d 775, 792 (S.D. Tex. 2005). Further, in 2006, the Fifth Circuit issued an unpublished opinion, *Doop v. Chapman*, 211 Fed. Appx. 246 (5th Cir. 2006), in which it held that the plaintiff children's Fourth Amendment right to be free from unlawful seizure was not violated because there was "evidence regarding whether [one child] had been abused" and "[a]lthough the investigation may have been flawed, at the time, there was sufficient evidence to justify removing the children pending an investigation of the abuse allegations." *Id.* at 248. Further, the Court held, "given the state of the law in 2001, the application of the Fourth Amendment to child welfare officials in this context had not been clearly established." *Id.*

In 2008, the Fifth Circuit decided *Gates v. Texas Department of Protective & Regulatory Services*, 537 F.3d 404 (5th Cir. 2008), in which parents and children asserted Fourth Amendment violations stemming from a child-abuse investigation. "Applying the reasoning of *Roe*," the Court

held that there was no special need to enter the family home without a warrant or probable cause because the purpose of the entry was closely tied with law enforcement." *Id.* at 424. However, the Court also concluded that although "the law regarding consent and exigent circumstances has been clearly established for some time, ... the law regarding the special needs exception, as arguably applied to the facts of this case, was not clearly established" in 2000 and it was reasonable for the individual defendants to believe that the special needs doctrine applied to their entry into the home.

Turning to the seizure of the children from the home, the Fifth Circuit noted that the Fourth Amendment applied to seizures of children from their homes, that it had stated in *Roe* in dicta that social workers may seize a child when exigent circumstances exist, but that it had "never described in more detail the circumstances that will permit the warrantless seizure of a child." *Id.* at 428. After examining the law of other circuits, the Court held "that the government may not seize a child from his or her parents absent a court order, parental consent, or exigent circumstances" and that "[e]xigent circumstances in this context means that, based on the totality of the circumstances, there is reasonable cause to believe that the child is in imminent danger of physical or sexual abuse if he remains in his home." *Id.* at 429.

The Court also considered the constitutionality of the TDPRS employees' taking the children from their public schools to an advocacy center to be interviewed without a court order. The Court rejected a blanket rule of exigent circumstances, noting that "[t]emporarily seizing a child from a public school in order to interview him in a safe place is decidedly different than seizing a child from his home for the purpose of removing him from allegedly abusive parents." *Id.* at 432. The Court noted that children's right to freely move about within a public school are restricted, the nature and scope of the intrusion into the child's rights is relatively small, and the seizure is for the purposes

of interviewing the children for their own protection." *Id.* Thus, an exigent circumstances requirement was "too high a threshold." *Id.* at 433. Instead, the Court held that "before a social worker can remove a child from a public school for the purpose of interviewing him in a central location without a court order, the social worker must have a reasonable belief that the child had been abused and probably will suffer further abuse upon his return home at the end of the school day." *Id.* Before seizing a child on an anonymous tip of abuse, TDPRS must sufficiently corroborate the tip by initiating its own investigation, which might involve a preliminary interview of the child, his teachers, or peers, or perhaps a visual inspection of any injuries that can bee seen without removing the child's clothing. *Id.* Though the Court found a Fourth Amendment violation in the seizure, the Court held that the law regarding seizing children from school for the purpose of interviewing them without a court order was not clearly established in 2001.

Last, the *Gates* court considered the children's claim that deputies violated their Fourth Amendment rights when they moved them into a separate room at the YMCA, a private facility, in order to interview them. The Court held that the seizure, akin to an investigatory detention under *Terry v. Ohio*, was reasonable because it was minor (simply being moved to a separate room) and of short duration, the children were simply questioned about the allegations and released, and it was supported by reasonable suspicion and was no more intrusive than necessary.

With these precedents in mind, the Court turns to the allegations in this case.

**1. Interview at Erin's school**

Based on *Roe* and *Gates*, the Court finds that Brooks did not violate the Fourth Amendment when he went to Erin's public elementary school and interviewed her there. The interview was similar to the interview conducted by the *Gates* defendants at the YMCA, which the Fifth Circuit

found reasonable. The fact that it occurred at a public school as opposed to on private property further bolsters the conclusion that the interview did not violate the Fourth Amendment. *See Gates*, 537 F.3d at 432 (noting that "the rights of children to freely move about, especially within a public school, are not as extensive as adults' rights"). Plaintiffs have not submitted any evidence demonstrating that the interview was not of a reasonable duration or was more intrusive than necessary. Further, based on the report, which presumably was made by the child's mother, and Brooks's review of the file, Brooks had reasonable suspicion to conduct the interview.[11]

Even if it was a violation of the Fourth Amendment, however, the law regarding seizing children at school for the purpose of interviewing them without a court order was not clearly established at the time. And Plaintiffs have failed to demonstrate that Brooks's behavior in going to the school to interview Erin about the alleged abuse was not objectively reasonable in light of the law in 2005. Brooks would have reasonably relied on Texas law and TDFPS policy, which permits TDFPS investigators to interview a child in a suspected abuse case at their school without prior notification or consent of the parents.[12] Plaintiffs have pointed to no clearly established law stating

---

[11] Plaintiffs assert that the "interview conducted by Mr. Brooks with Erin Michelle Smith was so fundamentally flawed that it was grossly unreliable." However, Plaintiffs never provide any details regarding the alleged deficiencies beyond this conclusory statement, and thus fail to establish a constitutional violation. In addition, Plaintiffs provide no briefing regarding whether the law governing proper methods of questioning alleged victims of child abuse was so clearly established as to defeat a claim of qualified immunity. *See Behrens v. Sharp*, 15 F.3d 180 (5th Cir. 1994). Accordingly, Plaintiffs have wholly failed to meet their burden to overcome the qualified immunity defense with regard to any alleged deficiencies in the interview.

[12] Texas Family Code § 261.302 provides that the investigation may include an interview, which may be conducted at any reasonable time and place, including the child's school. Section 261.311 provides that, "[w]hen during an investigation of a report of suspected child abuse or neglect a representative of the department or the designated agency conducts an interview with or an examination of a child, the department or designated agency shall make a reasonable effort before 24 hours after the time of the interview or examination to notify each parent of the child and the child's legal guardian, if one has been appointed, of the nature of the allegation and of the fact that the interview or examination was conducted."

that Brooks could not interview Erin under these circumstances without prior parental notification or consent or that the interview was unreasonable and in violation of Erin's Fourth Amendment rights. Defendant Brooks is therefore entitled to qualified immunity on this claim.

## 2. Seizure/Removal from David Smith's custody

When Brooks refused to release Erin to her father or his designated emergency contact, Erin was seized for purposes of the Fourth Amendment. Brooks removed Erin from her sole managing conservator, the person authorized by law to have custody of her and to choose her residence. Thus, while Erin may not have been taken into TDFPS custody, she was removed from David's custody sufficient to invoke the protections of the Fourth Amendment.

In *Gates*, the Fifth Circuit made clear that "the government may not seize a child from his or her parents absent a court order, parental consent, or exigent circumstances." *Gates*, 537 F.3d at 429. It is undisputed that Brooks did not have a court order, and Plaintiffs' summary-judgment evidence demonstrates a lack of David's parental consent. Thus, the removal is constitutional only if justified by exigent circumstances. According to *Gates*, "[e]xigent circumstances" means that, "based on the totality of the circumstances, there is reasonable cause to believe that the child is in imminent danger of physical or sexual abuse if [s]he remains in his home." *Gates*, 537 F.3d at 429. "This is a flexible inquiry that considers all of the facts and circumstances with no one factor being dispositive." *Id.* Accordingly, whether there was time to obtain a court order is only one factor that informs the reasonableness analysis, and other relevant factors are the nature of the abuse (its severity, duration, and frequency), the strength of the evidence supporting the allegations of abuse, the risk that the parent will flee with the child, the possibility of less extreme solutions, and any harm to the child that might result from the removal. *Id.* The Court applies this standard "paying careful

attention to what information was known by the TDPRS employees making the decision to remove the children." *Id.*

The undisputed evidence is that, at the time of the incident in question, Brooks had information that arguably corroborated Julie's allegations that David had sexually abused Erin. Brooks's affidavit states that when he was assigned to investigate the case, he reviewed the full file, which revealed that a prior investigation had found reason to believe that David emotionally abused and physically neglected his daughter. Further, TDFPS investigators had been unable to determine whether physical or sexual abuse had occurred. When Brooks went to the school to interview Erin, she repeated some of the things Julie had reported but also related things that were different than those related by Julie and included details not related by Julie. This raised Brooks's suspicion because, in his experience as an investigator, when a child is "fed" a story by an adult, the child's account usually does not include details and does not differ from the adult's. When Brooks ran criminal history checks on David and Julie through the service that TDFPS uses to check criminal history, Brooks found that Julie had no criminal history, but David's criminal history included several episodes of family violence. Plaintiffs have disputed the truth of the information in the file and the criminal background check, but they do not dispute that that is the information that Brooks possessed at the time he had to make a decision whether to remove Erin. Based on the information known to Brooks at the time, he had reasonable cause to believe that Erin was in imminent danger of abuse if she remained in David's custody. With regard to the other factors outlined by the Fifth Circuit in *Gates*, the Court notes that allegations of sexual abuse are serious, there is no evidence whether Brooks had time to obtain a court order before removing Erin from David's custody, and Brooks took the less drastic step of placing Erin with her mother rather than taking her into TDFPS

custody. Based on the flexible inquiry prescribed by the Fifth Circuit, the Court finds that exigent circumstances justified the removal.

Even if the exigent circumstances test is not satisfied, however, the law regarding seizures of children in suspected abuse cases was not clearly established in 2005. In *Gates*, which was decided in 2008, the Fifth Circuit noted that although it had stated in dicta in 2002 that exigent circumstances would permit the warrantless seizure of a child, it had "never described in more detail the circumstances that will permit the warrantless seizure of such a child" and that other circuits had reached differing conclusions. *Gates*, 537 F. 3d at 428. The conduct here occurred in 2005, before the Fifth Circuit had clarified the standard. Further, Brooks would have been objectively reasonable in relying on applicable Texas law at that time, which permitted him to take possession of Erin without a court order "on information furnished by another that has been corroborated by personal knowledge of facts and all of which taken together would lead a person of ordinary prudence and caution to believe that the child has been the victim of sexual abuse." TEX. FAMILY CODE § 262.104. Defendant Brooks is therefore entitled to qualified immunity with regard to the initial seizure of Erin.

## C. Fourteenth Amendment Claims

In addition to the Fourth Amendment claim, Plaintiffs assert that Brooks violated Erin's rights under the Fourteenth Amendment of the United States Constitution. Plaintiffs appear to allege both procedural and substantive due process claims.

The first step in analyzing either of those claims is identifying a protected property or liberty interest. The Supreme Court has held that parents have a "fundamental liberty interest... in the care, custody, and management of their child..." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). The Fifth Circuit also recognizes that the right to family integrity is a form of liberty protected by the due

process clause, and that the right belongs to the child as well as the parents. *See Morris v. Dearborne*, 181 F.3d 657, 666 (5th Cir. 1999); *Wooley v. City of Baton Rouge*, 211 F.3d 913, 923 (5th Cir. 2000) (noting that "a child's right to family integrity is concomitant to that of a parent"); *see also Doe v. Heck*, 327 F.3d 492, 518 (7th Cir. 2003) ("Equally fundamental is the right of a child to be raised and nurtured by his parents."). It has also long been established that the "most essential basic aspect of familial privacy-[is] the right of the family to remain together without the coercive interference of the awesome power of the state." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 922 (5th Cir. 2000) (noting that it had recognized the right in *Hodorowski* in 1988).[13]

### 1. Erin's right to family integrity (substantive due process)

Plaintiffs assert that Erin was deprived of the right to family integrity when she was removed from her father's custody. This claim is properly analyzed as a Fourteenth Amendment substantive due process claim. *See Roe*, 299 F.3d at 412 (noting that it had conducted a substantive due process analysis in cases in which the social worker had removed the child from its family home). However, in cases involving child welfare officials seeking temporary removal of children from their families, "[c]ases claiming governmental interference with the right of family integrity are properly analyzed by placing them, on a case by case basis, along a continuum between the state's clear interest in protecting children and a family's clear interest in privacy. When the facts of a case place it in the center of the continuum where the two interests overlap and create a tension, the right to family integrity may properly be characterized as nebulous, and thus a defendant may claim the protection of qualified immunity." *Morris*, 181 F.3d at 671. Brooks had a strong interest in protecting Erin

---

[13] It is not clear when David regained custody of Erin. To the extent his claim based on a right to family integrity is not barred by limitations, the analysis of Erin's claim applies equally to David's claim.

25

from suspected abuse, and he was justified in concluding that Erin needed to be removed from David Smith's custody temporarily while the allegations could be investigated. Thus, this case falls in the center of the continuum.[14] Because the right to family integrity is "nebulous" in this situation, Brooks is entitled to qualified immunity.

### 2. Placement with Julie Smith - deliberate indifference/substantive due process

Plaintiffs allege that Brooks was deliberately indifferent to Erin's interests when he placed Erin with Julie. They assert that Brooks did not conduct proper research before placing Erin with Julie, that Brooks failed to read "in any meaningful way" the CPS report, and that "the mere existence of a substantial file on the child indicated a need for close inspection before pursuing his 'investigation.'" Brooks testified that, at the time he made the placement decision, he knew of no aliases and no criminal history for Julie. Though David apparently showed him a protective order, Brooks read it as protecting David from Julie, but Brooks testified that he did not see a "judicial finding that Mrs. Smith was a danger to Mr. Smith and Erin Smith," as Plaintiffs assert. Plaintiffs have not provided a copy of the order, so the Court is unable to determine what was shown to Brooks.

To demonstrate a viable substantive due process claim in cases involving government action, the plaintiff must show that the state acted in a manner that "shocks the conscience." *County of Sacramento, et. al, v. Lewis*, 523 U.S. 833, 846 (1998). To satisfy this standard, the Fifth Circuit has generally required plaintiffs to demonstrate that "the defendant state official at a minimum acted

---

[14] To the extent that the length of the interference with the right to family integrity in this case or the strength of the evidence of abuse places this case closer to one end of the continuum, Plaintiffs have failed to present any argument or cite to any legal authority demonstrating that this case is not within the realm of situations in which the Fifth Circuit has found the right to be nebulous.

with deliberate indifference toward the plaintiff." *McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002). To establish deliberate indifference, the plaintiff must demonstrate culpability beyond mere negligence or even gross negligence. *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000).

The deliberate indifference standard is a subjective standard of recklessness, based on what the defendant knew rather than what he should have known. *Hernandez*, 380 F.3d at 881. The central inquiry is whether Brooks was "aware of facts from which the inference could be drawn that placing [Erin with Julie Smith] created a substantial risk of danger." *Id.* at 882. In other words, Plaintiffs "must demonstrate that [Brooks] knew of the underlying facts indicating a sufficiently substantial danger and that [he] did not believe that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.*

In *Hernandez*, the Fifth Circuit upheld summary judgment on qualified immunity grounds when parents alleged that the defendant social worker acted with deliberate indifference in placing a child in a foster home without conducting a full investigation into complaints of abuse at the home. *Hernandez*, 380 F.3d at 883-84. In that case, the court noted that the defendant's acts may have been negligent but concluded that evidence of negligence was insufficient to establish deliberate indifference, noting that "the very high standard of deliberate indifference cannot be inferred from negligence alone." *Id.* at 884.

The evidence in this case does not support an inference that Brooks's conduct with regard to the initial placement with Julie was so outrageous and egregious that it "shocks the conscience" or that he was deliberately indifferent. David's allegation that Brooks should have researched Julie's background and conducted a better investigation before removing Erin and placing her with Julie

is analogous to the *Hernandez* plaintiff's allegation that the social worker in that case should have conducted a full investigation, which the Fifth Circuit found insufficient to establish deliberate indifference in that case. While the placement with Julie, who was living in a shelter at the time, might not have been wise, and even if it rises to the level of gross negligence, it does not demonstrate deliberate indifference as there is no evidence that Brooks actually perceived a risk to Erin and chose to ignore it. Thus, the Court finds that Plaintiffs have failed to establish deliberate indifference with regard to the initial placement with Julie.[15]

### 3. Leaving Erin with Julie Smith - deliberate indifference/substantive due process

Plaintiffs also appear to be asserting a substantive due process claim based on Brooks's failure to remove Erin from Julie's custody after it was allegedly apparent that the placement was not in her best interests and/or was unreasonably dangerous. David's affidavit asserts that Brooks testified at his deposition that "even after he learned that Erin had missed 18 days of school after being placed with her mother and that she was living in a car in the middle of winter he believed he had no further duty or obligation to assure her safety." At the deposition, Brooks was asked, "[A]fter [Ms. Valentic] told you that Julie Smith was not an appropriate placement and gave you the evidence that showed why Julie Smith was not an appropriate placement, why did you not do any further investigation at that point?" Brooks responded that he had no allegations or referrals regarding Julie

---

[15] Plaintiffs never specify exactly what right or liberty interest was infringed, but it appears to be a right to personal security and reasonably safe living conditions. In *Hernandez*, the court appeared to recognize a "right to personal security" and to "reasonably safe living conditions" and found that the state had an affirmative duty to protect the child based on the "special relationship" created by the State's removal of the child from his parents and placement under state supervision in a licensed foster home. Here, there is no evidence that CPS ever took custody of Erin. Though it did take possession of Erin briefly, it then placed her with her mother. Plaintiffs do not argue that there was a "special relationship" between Erin and Brooks or CPS. Even if the facts did establish a "special relationship" without CPS taking custody of Erin, the law was not clearly established that such a special relationship was created such that CPS and Brooks would have an affirmative duty to ensure Erin's personal safety with regard to risks posed by her mother.

Smith, and that she was not alleged to have done anything at that point. This evidence does not demonstrate that Brooks knew that Erin had not been to school or that she was living in a car and fails to establish that Brooks was deliberately indifferent.

Again, Plaintiffs do not specify the nature of their theory of liability. There is generally no constitutional duty on the part of the state to protect individuals from private harm. The Supreme Court has recognized two possible exceptions to this general rule – (1) the "special relationship" exception, which holds that the Constitution imposes upon the state a duty of care towards individuals who are in its custody; and (2) the state-created danger exception, which imposes upon state officials a duty to protect individuals from harm when their actions created or exacerbated a danger to the individual. As noted, Plaintiffs have not argued the existence of a special relationship. With regard to the state-created danger theory, Plaintiffs' claim fails because the Fifth Circuit has not officially adopted the state-created danger theory at this time, and it was not clearly established in 2005. *See Walding v. United States*, Civ. A. No. 08-CV-124-XR, 2009 WL 701807 (W.D. Tex. March 16, 2009). Even if either theory applied, Plaintiffs have not provided summary-judgment evidence meeting the high standard of deliberate indifference. Thus, Brooks is entitled to qualified immunity on this claim.

### 4. Procedural Due Process claim

In *Wooley*, the Fifth Circuit considered the nature of the process due to a child before depriving him of the right to family integrity. *Wooley*, 211 F.3d at 924. It noted that "[t]he right to family integrity must be balanced against the state's interest in protecting the health, safety, and welfare of children" and that, "[i]n close cases, the tension between these two interests is pronounced and we occasionally have been unable to conclude that the due process violation involved was

'clearly established.'" *Id.* Thus, the "cases in which the state's interest has blurred the existence of a family's rights uniformly have involved removal of children by social workers specifically charged with protecting children where there were allegations of abuse." *Id.*

In *Gates*, the Fifth Circuit noted that Texas law calls for a hearing as soon as possible after children are removed without a court order,[16] and that adequate procedural due process was given when a hearing was provided. *Gates*, 537 F.3d at 435. In this case, however, Plaintiffs assert that Brooks "circumvented the carefully crafted procedures for removal of a child on an emergency basis that are set forth in the Texas Family Code." Plaintiffs state that, had these procedures been followed, David Smith would have been entitled to a hearing and the record would have shown that the charges were frivolous and that placing the child with her mother was not in her best interests.

In *Gates*, as noted, the Fifth Circuit held that following the procedures outlined in the Family Code provided adequate procedural due process. However, it does not necessarily follow that not following those specific procedures is constitutionally inadequate. Plaintiffs allege only that these procedures were not followed, but do not allege how TDFPS deviated from the procedures and do

---

[16] Texas law permits an authorized representative of TDFPS to take possession of a child without a court order in certain circumstances. *See* TEX. FAMILY CODE § 262.104(a). However, it also requires that "[w]hen a child is taken into possession without a court order, the person taking the child into possession, without unnecessary delay, shall: (1) file a suit affecting the parent-child relationship; (2) request the court to appoint an attorney ad litem for the child; and (3) request an initial hearing to be held by no later than the first working day after the child is taken into possession." *Id.* § 262.105(a). "The initial hearing may be ex parte and proof may be by sworn petition or affidavit if a full adversary hearing is not practicable" and "[i]f the initial hearing is not held within the time required, the child shall be returned to the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian who is presently entitled to possession of the child." *Id.* § 262.106. If the initial hearing is held, the court must order the return of the child unless it is satisfied that there is a continuing danger to the physical health or safety of the child if the child is returned or the evidence shows that the child has been the victim of sexual abuse on one or more occasions and that there is a substantial risk that the child will be the victim of sexual abuse in the future." *Id.* § 262.107(a). In addition, "[t]he department may place a child with a relative or other designated individual identified on the proposed child placement resources form if the department determines that the placement is in the best interest of the child." *Id.* § 262.114.

30

not specify what procedures, if any, they were afforded. Based on the record before the Court, the Court is unable to conclude that Brooks violated Erin's right to procedural due process. *See Doop v. Chapman*, 211 Fed. Appx. 246 (5th Cir. 2006) (holding that the plaintiff's procedural due process claims failed because they did not demonstrate how the post-seizure proceedings were constitutionally inadequate). Plaintiffs have failed to meet their burden to establish a violation of a constitutional right.

**D. Plaintiff's State-Law Claims and TDFPS's Supplemental Motion to Dismiss**

Plaintiffs assert state-law claims pursuant to Article I § 9 of the Texas Constitution and Texas common law. Plaintiff's Original Petition states that Plaintiff asserts claims for "stigmatization" (defamation), abuse of process, and malicious prosecution. *Id.* As noted previously, however, the Court has considered summary judgment *sua sponte* on the abuse of process claim and the Texas Constitution claim for damages, and the malicious prosecution claim against Brooks is barred by limitations. TDFPS also moves to dismiss the malicious prosecution claim against it on the basis of limitations, and the motion is granted. TDFPS's motion to dismiss the malicious prosecution claim against it based on sovereign immunity is also granted, since the Legislature has not waived immunity for intentional tort claims.[17]

---

[17] As a general rule, a Texas government unit is immune from tort liability unless the legislature has waived liability. *Harris County v. Dillard*, 883 S.W.2d 166, 168 (Tex.1994). The Texas Tort Claims Act (TTCA) defines "governmental unit" as the state "and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001 (3) (a). The TTCA provides the "only, albeit limited, avenue for common-law recovery against" Texas governmental units. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653 (Tex. 2008). Specifically, the Act waives governmental immunity to the extent that liability arises from the "use of a motor-driven vehicle or motor-driven equipment" or from " a condition or use of tangible personal or real property." TEX. CIV. PRAC. & REM. CODE § 101.021. The TTCA does not waive sovereign immunity for intentional torts. TEX. CIV. PRAC. & REM. CODE § 101.057 (2); *see also Swafford v. City of Garland*, 491 S.W.2d 175 (Tex.Civ.App.–Eastland 1973, writ ref'd n.r.e.) (upholding city's immunity from

Neither Defendant expressly addresses David Smith's defamation claim. Defamation claims also have a one-year limitations period. TEX. CIV. PRAC. & REM. CODE § 16.002(a). Further, the defamation claim against TDFPS appears to be barred by sovereign immunity. Plaintiff David Smith must therefore respond with summary-judgment evidence before September 29, 2009 if he believes that any part of this claim survives a limitations or sovereign immunity defense.

## CONCLUSION

The abuse of process and Texas Constitution claim for money damages will be dismissed by *sua sponte* summary judgment unless Plaintiffs present evidence sufficient to raise a fact issue no later than **September 29, 2009**.

David Smith's Motion for Reconsideration (docket no. 19) is DENIED. David Smith was not required to exhaust administrative remedies before filing suit, and thus all his § 1983 claims based on acts occurring before October 15, 2006 are barred by limitations. The state-law malicious prosecution claim against Brooks is also barred by limitations, and is dismissed.

Defendant Brooks's Motion for Summary Judgment (docket no. 10) is GRANTED IN PART and DISMISSED AS MOOT IN PART. All § 1983 claims asserted by Erin Smith against Brooks are dismissed on the basis of qualified immunity. The motion is dismissed as moot insofar as it seeks summary judgment on the malicious prosecution claim on the defense of official immunity because the claim is dismissed based on limitations.

Defendant TDFPS's Supplemental Motion to Dismiss the state law claims against it (docket no. 23) is GRANTED. The malicious prosecution claim against TDFPS is dismissed based on limitations and sovereign immunity. The defamation claim will be dismissed pursuant to the Court's

malicious prosecution claim on basis of sovereign immunity).

*sua sponte* motion for summary judgment based on sovereign immunity and limitations unless Smith

shows presents evidence raising a fact issue before **September 29, 2009.**

It is so ORDERED.

SIGNED this 15th day of September, 2009.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE